**E-FILED**
Thursday, 21 February, 2013  10:13:18 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| FIRST FINANCIAL BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-cv-1509 |
| | ) | |
| SCOTT BAUKNECHT, and | ) | |
| STATE BANK OF GRAYMONT, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant State Bank of Graymont's (Graymont) Motion to Dismiss Counts IV, VI, VII, and VIII Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1 (d/e 13) and Defendant Scott Bauknecht's Motion to Dismiss Counts I, IV, VII and VIII Pursuant to Federal rule of Civil Procedure 12(b)(6) and Local Rule 7.1 (d/e 17) (collectively the Motions).  For the reasons set forth below, the Court recommends that the Motions be ALLOWED in part and DENIED in part.

## STATEMENT OF FACTS

For purposes of the Motions, the Court must accept as true all well-pleaded factual allegations contained in the Complaint (d/e 1) and draw all

inferences in the light most favorable to Plaintiff First Financial Bank, N.A.
(First Financial).  Hagen v. City of West Peoria, 84 F.3d 865, 868-69
(7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177,
178 (7th Cir. 1996).  The Complaint alleges the following:

On June 6, 2002, Bauknecht worked for Pontiac National Bank, N.A.,
also known as Peoples Bank (Pontiac).  On that date, Bauknecht
executed a document entitled Pontiac National Bank Confidentiality
Acknowledgement (Agreement).  Under the terms of the Agreement
Bauknecht agreed to refrain from disclosing "all information related to
Pontiac's customers, depositors, loan clients . . ., as well as business
plans, procedures, processes and endeavors" of Pontiac for a period of two
years after the end of his employment with Pontiac.  Complaint (d/e 1),
¶ 11, and Exhibit 1, Agreement.  Thereafter FREESTAR Bank, N.A.
(FREESTAR), became the successor in interest to Pontiac.  Complaint,
¶ 9.  Bauknecht continued to work for the successor FREESTAR.

On December 31, 2012, FREESTAR merged with Plaintiff First
Financial.  As part of the merger,

> First Financial combined with its own information and
> resources, the customer and prospect lists, referral sources,
> business plans and strategic plans, internal financial
> documents, quarterly reports, contact information for
> customers, customer financial histories, and personal customer

information (hereinafter collectively referred to as "Confidential Information") acquired from FREESTAR Bank and its predecessor, Pontiac National Bank, N.A., also known as Peoples Bank.

Complaint, ¶ 9.  Bauknecht continued his employment with the merged bank, First Financial.  Bauknecht worked as a Vice President and Loan Officer of First Financial.  Complaint, ¶¶ 9-11.

Beginning in January 2012, Bauknecht created an unauthorized personal database of First Financial's Confidential Information, referred to in the Complaint as the "Master Database."  Complaint ¶¶ 13, 14. According to the Complaint, Bauknecht created the Master Database while he was an employee of First Financial for the purpose of competing against First Financial.  Complaint ¶ 13.  Bauknecht further conducted unauthorized targeted inquiries into the loan status and terms of several First Financial lending accounts while he was employed at First Financial. The Complaint alleges that Bauknecht made these inquiries to compete against First Financial.  Complaint ¶¶ 15-16.

On January 23, 2012, Bauknecht quit First Financial, and the next day, January 24, 2012, he began working as a Loan Officer for Graymont. Graymont is a competitor of First Financial.  Bauknecht took with him from First Financial to Graymont:  the Master Database; the information from the unauthorized targeted inquiries; highly confidential business documents of

First Financial, including business plans, strategic plans, and quarterly reports; and soil maps and farm equipment guides that were the property of First Financial.  Bauknecht immediately began using the information and property he took from First Financial to compete with First Financial and solicit customers of First Financial.  Bauknecht and Graymont solicited First Financial loan customers through these tactics.  Bauknecht and Graymont completed refinanced loans in excess of $10,000,000.00 on more than twenty loans that were held by First Financial.  Complaint ¶¶ 18-20.

The Complaint alleges that Bauknecht also made misrepresentations about First Financial to First Financial customers to induce those customers to move their business to Graymont.  The Complaint alleges that the Defendants made the following misrepresentations to First Financial customers:

    a.    Bauknecht informed some First Financial customers that First Financial has a "Preferred Customer List" that grants certain customers special loan interest rates, such as a 3.25% rate on a revolving line of credit. Bauknecht knows that First Financial has no such "Preferred Customer List." Bauknecht made such misrepresentations in order to undermine customer confidence in First Financial and cause customers to move their accounts or loans from First Financial to Graymont.

    b.    Bauknecht induced an elderly First Financial customer to move a large loan from First Financial to Graymont by

> intentionally misinforming him that the prepayment penalty the customer would have to pay First Financial would only be between $10,000 and $12,000, rather than being over $30,000.
>
> c.   Bauknecht contacted several First Financial customers who are farmers, as well as attorneys representing bank customers who own farms, to falsely report that First Financial's Farm Manager is leaving his employment at First Financial. Because the Professional Farm Management Services provided by First Financial to Central Illinois farmers are critical to the management of their farms, many of these farmers and attorneys have contacted the Bank alarmed and upset about Bauknecht's (false) report.

Complaint, ¶ 21.  First Financial alleges that it is experiencing over $400,000.00 in damages annually in lost interest payments as a result of the Defendants' actions.

Based on these allegations, First Financial has alleged the following claims against Bauknecht and Graymont:  breach of contract against Bauknecht (Count I); breach of fiduciary duty against Bauknecht (Count II); misappropriation of trade secrets against Bauknecht and Graymont in violation of the Illinois Trade Secret Act (ITSA), 765 ILCS 1065/1 et seq. (Count III); conversion against Bauknecht and Graymont (Count IV); violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, against Bauknecht (Count V); tortious interference with contract against Graymont (Count VI); tortious interference with prospective economic

advantage against Bauknecht and Graymont (Count VII); and civil conspiracy against Bauknecht and Graymont (Count VIII).  Graymont moves to dismiss Counts IV, VI, VII, and VIII.  Bauknecht moves to dismiss Counts I, IV, VII, and VIII.

<u>ANALYSIS</u>

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. <u>Fed. R. Civ. P.</u> 12(b)(6).  The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct."  <u>Fed. R. Civ. P.</u> 8(a)(2) & (d)(1).  While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests.  <u>George v. Smith</u>, 507 F.3d 605, 608 (7th Cir. 2007).  The Court addresses the Counts at issue in order.

Count I

Bauknecht argues that First Financial fails to allege a breach of contract.  To allege a breach of contract, First Financial must allege: (1) the existence of a valid contract; (2) performance by First Financial; (3) breach by Bauknecht; and (4) damages.  Gallagher Corp. v. Russ, 309 Ill.App.3d 192, 199, 721 N.E.2d 605, 611 (Ill. App. 1st Dist. 1999).  First Financial may plead the condition precedent of its performance generally. Fed. R. Civ. P. 9(c).  First Financial pleads all of these elements for breach of the Agreement.  Complaint, ¶¶ 23-27.  In addition, First Financial attaches a copy of the Agreement to the Complaint, which is allowed, but not required.  See Fed. R. Civ. P. 10(c).  Count I states a claim.

Bauknecht argues that First Financial fails to allege sufficient facts to establish that it is the successor to Pontiac entitled to enforce the Agreement.  The Court disagrees.  First Financial alleges that FREESTAR was the successor in interest to Pontiac and First Financial merged with FREESTAR.  These allegations put Bauknecht on notice of the basis for First Financial's assertion of its rights under the Agreement.  See Fed. R. Civ. P. 8(a).  When viewed favorably to First Financial, the allegations at least create an issue of fact regarding whether First Financial is entitled to enforce the Agreement.

Bauknecht next argues that the Agreement is void as a matter of Illinois law because it has no chronological limitation.  See Konicki v. Oak Brook Racquet Club, Inc., 110 Ill. App. 3d 217, 223-24, 441 N.E.2d 1333, 1338 (Ill. App. 2$^d$ Dist. 1982) (restrictive employment covenants must contain reasonable chronological limitations).  The Agreement, however, contains a chronological limitation.  The Agreement extends, "for the duration of this employment, and for a period of two (2) years after this employment."  Agreement.  When viewed favorably to First Financial, Bauknecht allegedly left his employment on January 23, 2012.  If so, the Agreement ends by its terms on January 22, 2014.  The Agreement is not void for a lack of a chronological limitation.  Count I states a claim.

Count IV

Graymont and Bauknecht move to dismiss Count IV as preempted by the ITSA.[1]  Section 8 of the ITSA preempts common claims arising from misappropriation of trade secrets.  Section 8 provides:

> § 8. (a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.
>
> (b) This Act does not affect:

---

[1] Bauknecht adopts by reference Graymont's arguments for dismissal of Counts IV, VII, and VIII. Defendant's Memorandum in Support of Motion to Dismiss (d/e 18), at 1.

(1) contractual remedies, whether or not based upon misappropriation of a trade secret, provided however, that a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty;

(2) other civil remedies that are not based upon misappropriation of a trade secret;

(3) criminal remedies, whether or not based upon misappropriation of a trade secret; or

(4) the definition of a trade secret contained in any other Act of this State.

765 ILCS 1065/8.  The ITSA defines a trade secret as:

(d) "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d).  Thus, the ITSA preempts actions based on

conduct that misappropriates trade secrets, but does not preempt

claims "that are not dependent upon the existence of competitively

significant secret information, like an agent's duty of loyalty to his or

her principal."  Hecny Transp., Inc. v. Chu, 430 F.3d 402, 405 (7th Cir.

2005).  See EBI Holdings, Inc. v. Butler, 2009 WL 400634, *5-*6

(C.D. Ill. February 17, 2009); Jano Justice Systems, Inc. v. Burton,

2008 WL 5191765, *2 (C.D. Ill. December 11, 2008); see also Von

Holdt v. A-1 Tool Corp., 2013 WL 53986, *13 (N.D. Ill. January 3,

2013).

In this case, First Financial alleges in Count IV that the

Defendants converted both trade secrets under the ITSA, as well as

other property such as soil maps and farm equipment guides.

Complaint, ¶ 43.  The conversion of trade secrets would be

preempted, but the conversion of the other property would not.  Count

IV, therefore, may proceed, but the claim is limited to conversion of

property that does not constitute trade secrets subject to the ITSA.

Counts VI, VII, and VIII

The Defendants move to dismiss Counts VI, VII, and VIII

because those claims incorporate by reference the conversion claim.

Complaint, ¶¶ 53, 59, 66.[2]  The Defendants argue that these counts

are preempted because Count IV is preempted.  The Defendants'

argument fails because Count IV may proceed.  Counts VI, VII, and

---

[2] Bauknecht only moves to dismiss Counts VII and VIII.  Graymont moves to dismiss all three counts.

VIII further are not preempted because they are based on alleged wrongful conduct that is unrelated to the misappropriation of trade secrets.  See Hecny, 430 F.3d at 405 ("An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would sound even if the customer list were a public record.").  These counts, therefore, may proceed.

WHEREFORE this Court recommends that Defendant State Bank of Graymont's Motion to Dismiss Counts IV, VI, VII, and VIII Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1 (d/e 13) and Defendant Bauknecht's Motion to Dismiss Counts I, IV, VII and VIII Pursuant to Federal rule of Civil Procedure 12(b)(6) and Local Rule 7.1 (d/e 17) be ALLOWED in part and DENIED in part.  The Motions should be allowed to the extent that Plaintiff's claim for conversion in Count IV should be limited to the alleged conversion of property other than trade secrets subject to the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.  The Motions should otherwise be denied.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of this Report and

Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

Failure to file a timely objection will constitute a waiver of objections

on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538,

539 (7th Cir. 1986).  See Local Rule 72.2.

ENTER:   February 21, 2013


_____s/ Byron G. Cudmore_____
UNITED STATES MAGISTRATE JUDGE