E-FILED
Tuesday, 23 July, 2013  04:31:38 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| FIRST FINANCIAL BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-cv-1509 |
| | ) | |
| SCOTT BAUKNECHT, and | ) | |
| STATE BANK OF GRAYMONT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff First Financial Bank, N.A.'s (First Financial) Motion to Compel Document Production (d/e 41) (Motion). For the reasons set forth below, the Motion is ALLOWED in part and DENIED in part.

## BACKGROUND

Defendant Scott Bauknecht quit First Financial in January 2012 and went to work for Defendant State Bank of Graymont (Graymont). First Financial alleges claims against Bauknecht and Graymont based on alleged wrongful conduct related to this event. Complaint (d/e 1); see Report and Recommendation entered February 21, 2013 (d/e 24), for a summary of the allegations and claims.

On February 13, 2013, First Financial served on Graymont a request for production of documents.  <u>Defendant's Response to Motion to Compel (d/e 44) (Graymont Response)</u>, Exhibit 1, <u>Plaintiff First Financial Bank's First Set of Document Requests to Defendant State Bank of Graymont (Document Request)</u>.  Defendants objected to producing certain documents.  The parties have met and conferred in an effort to resolve the objections.  The parties have further met and conferred to attempt to resolve objections regarding the procedures for producing electronically stored information (ESI) responsive to First Financial document requests.  The parties have been unable to resolve all of the objections.   Hence, First Financial brings this Motion.

<u>PRINCIPLES OF DISCOVERY</u>

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party.  The federal discovery rules are to be construed broadly and liberally. <u>Herbert v. Lando</u>, 441 U.S. 153, 177 (1979); <u>Jefferys v. LRP Publications, Inc.</u>, 184 F.R.D. 262, 263 (E.D .Pa. 1999).  Federal Rule of Civil Procedure 26(b)(1) provides that the "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .," but "[f]or good cause, the court

may order discovery of any matter relevant to the subject matter involved in the action." Id.

Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence.  The rule gives the district courts broad discretion in matters relating to discovery.   See Brown-Bey v. United States, 720 F.2d 467, 470-471 (7th Cir.1983); Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A., 657 F.2d 890, 902 (7th Cir.1981); see also, Indianapolis Colts v. Mayor and City Council of Baltimore, 775 F.2d 177, 183 (7th Cir.1985) (on review, courts of appeal will only reverse a decision of a district court relating to discovery upon a clear showing of an abuse of discretion).   The discovery relevance standard is flexible,

> If there is an objection the discovery goes beyond material relevant to the parties' claims or defenses, the Court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

Federal Rule of Civil Procedure 26(b)(1) Advisory Committee Notes, 2000 Amendment.  Remember, we are talking discovery, not admissibility at trial.

The party opposing discovery has the burden of proving that the requested discovery should be disallowed.  Etienne v. Wolverine Tube,

1:12-cv-01509-JBM-BGC   # 45   Page 4 of 13

Inc., 185 F.R.D. 653, 656 (D. Kan. 1999); <u>Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.</u>, 132 F.R.D. 204, 207 (N.D. Ind. 1990); <u>Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc.</u>, 730 F. Supp. 1165, 1186 (D. Mass. 1989).

Normally, the responding party pays the cost of producing documents.  See <u>Zubulake v. UBS Warburg LLC</u>, 216 F.R.D. 280, 284 (S.D.N.Y. 2003).  The Court has discretion to allocate the costs of ESI discovery between the parties.[1] In determining whether to reallocate costs, the Court will consider several factors:

> 1) the likelihood of discovering critical information; 2) the availability of such information from other sources; 3) the amount in controversy as compared to the total cost of production; 4) the parties' resources as compared to the total cost of production; 5) the relative ability of each party to control costs and its incentive to do so; 6) the importance of the issues at stake in the litigation; 7) the importance of the requested discovery in resolving the issues at stake in the litigation; and 8) the relative benefits to the parties of obtaining the information.

<u>Wiginton v. CB Richard Ellis, Inc.</u>, 229 F.R.D. 568, 573 (N.D. Ill. 2004).

With these principles in mind, the Court addresses the Motion.

---

[1] The Court has used the allocation of costs approach in a number of cases involving ESI discovery issues.  See also the 2006 Amendment Committee Note to Rule 26(b)(2) concerning cost allocation.

Page **4** of **13**

1:12-cv-01509-JBM-BGC  # 45  Page 5 of 13

## ANALYSIS

First Financial asks the Court to compel Defendants to produce documents, including ESI, responsive to Request Nos. 1 and 13. The Court addresses each request separately.

Request Number 1

Request No. 1 asks for:

All documents and things relating to Scott Bauknecht's application for employment, recruitment, or hiring by Graymont, including, but not limited to the Confidentiality Acknowledgement signed by Bauknecht (see Complaint Ex. 1).

Document Request, at 3. First Financial states that during the parties' discussions over this request, First Financial has further defined the documents it seeks with this request as follows:

A. Any email between Bauknecht and any employee at Graymont concerning his prospective employment by Graymont, including the confidential information he intends to bring with him from First Financial: and

B. Any email from Employee 1 at Graymont to Employee 2 at Graymont concerning Bauknecht's application, hire, or recruitment, or the confidential information he intends to bring with him from First Financial.

Plaintiff First Financial Bank, N.A.'s Memorandum of Law in Support of Motion to Compel (d/e 42) (First Financial Memorandum), at 3-4.

First Financial further requested that Defendant Graymont conduct the search for these emails in ESI through two separate searches. First

Page **5** of **13**

Financial requested a search "by recipient/sender for documents **to Bauknecht**, **from Bauknecht**, or **shared with Bauknecht**."   First Financial Memorandum, Exhibit 2, email dated April 30, 2013 (emphasis in the original) (hereinafter referred to as the "Recipient/Sender Search"). First Financial then requested a, "second, separate search by subject matter for documents containing the words or terms **Bauknecht**, **Bauk**, **Buak**, **Scott**, **SB**, **S.B.**, **First Financial**, **First Financial Bank**, **FF**, **FFB**, **Freestar**, **Pontiac National Bank**, or **Pontiac**."  Id. (emphasis in the original) (hereinafter referred to as the "Key Word Search").

Graymont objected to performing two searches as overly burdensome.  Graymont stated that it would "agree to run Bauknecht's name against various address fields as part of a search term broad search, but will not agree to run separate searches and reviews as you suggest." First Financial Memorandum, Exhibit 3, Letter dated May 8, 2013. Graymont, however, would not agree to two separate searches.

Graymont also objected to searching all of its email accounts. Graymont proposed only searching the email accounts of the four employees listed in its Rule 26 disclosures:  Ronald Minnaert, Paul Russow, Robert Tronc, and Scott Bauknecht.  First Financial would not

agree to these terms.  The Court believes the Key Word Search would be a broader more comprehensive search than the Recipient/Sender Search.

1. Two Separate Searches

Defendants' objection to conducting two separate searches is sustained unless First Financial agrees to pay the cost for the proposed separate Recipient/Sender Search.  Defendants' computer consulting expert Scott Worbel states that such a search is unorthodox, expensive, and will interfere with Defendant Graymont's operations.  Defendants' Response to Motion to Compel (d/e 44), Exhibit 4, Declaration of Scott Worbel (Worbel Declaration), ¶¶ 10-11.  The search also seems duplicative since Graymont agreed to search the email address fields as part of the Key Word Search.

The Court will not require Graymont to conduct the duplicative Recipient/Sender Search unless First Financial agrees to pay for it.  The relevant factors weigh heavily in favor of shifting the cost of a separate Recipient/Sender Search to First Financial.  The likelihood of uncovering additional relevant information is small and the cost of conducting a separate duplicative search is high.

Therefore, the Court directs Defendant Graymont to conduct the Key Word Search with all of First Financial's search terms quoted above.[2]  The Key Word Search shall search all relevant data fields, including all address fields, such as sender, recipient, cc, and bcc; the subject field; and the body of the email.   The temporal limitations of the search shall be emails sent or received from August 1, 2011, to February 1, 2012, inclusive of both dates.  Graymont shall then produce all responsive, unprivileged emails with all attachments, and a privilege log of any withheld documents in accordance with Federal Rule of Civil Procedure 26(b)(5).

The Court directs Graymont to conduct a separate Recipient/Sender Search only if First Financial elects and agrees to pay the entire cost of the separate search.  First Financial must notify Graymont in writing within fourteen days after the date of this Opinion if it will pay for the Recipient/Sender Search.

2.  The Email Accounts to be Searched

Defendants' objection to searching all of Graymont's email accounts is overruled.  Bauknecht's communications with Graymont personnel is relevant, at a minimum, to First Financial's claims against Bauknecht for breach of contract and breach of fiduciary duty.  Graymont seeks to limit

---

[2] Graymont may exclude the search term "First Financial Bank" as duplicative of the search term "First Financial."  See First Financial Memorandum, Exhibit 3, Letter dated May 8, 2012.

the search to the email accounts of the four named individuals.  Graymont argues that the search should be limited to these four individuals because they are listed on Defendants' Rule 26 initial disclosures.  The Rule 26 disclosure only means that these four individuals are the persons that Defendants, "may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i).  The designation does not indicate that the four individuals are the only employees at Graymont who have responsive documents in their email files.  The Key Word Search (and the Recipient/Sender Search if First Financial elects to pay for it), therefore, shall include all of Graymont's email accounts.

However, the Court is concerned with the cost of searching all email accounts at Graymont.  First Financial indicates that Graymont has fewer than forty employees, so the number of accounts may not be huge.  First Financial Memorandum, at 5, n.2.  Some of those employees, however, would have no reason to have relevant information.  Maintenance employees or other similar employees are not likely to have relevant emails.  The additional cost of including the email accounts of these types of employees in the search may be significant.  Still, the information First Financial seeks is discoverable and  important to the Plaintiff in this litigation.  Graymont would have greater ability to control costs since it will

be conducting the search.  The parties have provided no evidence to indicate any material difference in the ability of either party to bear the cost of production.  See Wiginton, 229 F.R.D. at 573.

Therefore, considering all the relevant factors cited on page four herein, the Court allocates the cost of conducting the Key Word Search as follows:  Graymont will pay seventy-five percent of the costs and First Financial will pay twenty-five percent of the costs.  First Financial will reimburse Graymont for its share of the costs within thirty days after receipt of the responsive documents.  This allocation of the costs recognizes that Graymont has the primary obligation to bear the cost of producing responsive documents, but provides some relief to Graymont for the cost of including all Graymont employees' email accounts in the search when some of the employees are less likely to have relevant documents.

Request No. 13

Request No. 13 asks for:

All documents and things reflecting or relating to any of the "Confidential Information" that First Financial defined in its Complaint. See Complaint ¶ 9 ("customer and prospect lists, referral sources, business plans and strategic plans, internal financial documents, quarterly reports, contact information for customers, customer financial histories, and personal customer information").

Document Request, at 5.  First Financial states that the Bauknecht has

identified a list of seventy-three First Financial customers who were

contacted after Bauknecht became a Graymont employee (Disputed

Customer List).  First Financial Memorandum, at 6.  First Financial wants

responsive documents with respect to all of those customers.

Graymont objects on the grounds that customer lists are not

confidential, evidence regarding contacts with First Financial customers

who did not become Graymont customers is irrelevant, and Graymont

cannot release customer information without a court order.  The Court

overrules the third objection as moot since the Court is now ordering

production of the documents.

The Court also overrules the other two objections.  First Financial

alleges that Defendants made false disparaging representations about First

Financial to customers.  Complaint (d/e 1), ¶ 21.  Graymont's

communications with all seventy-three customers on the Disputed

Customer List is relevant to those allegations regardless of whether the

customer list is confidential and regardless of whether the customers

moved accounts to Graymont.  Graymont is hereby ordered to produce all

of the unprivileged documents responsive to Request 13, and specifically

all responsive documents that relate to the seventy-three customers on the

Disputed Customer List, and a privilege log for any documents withheld

under a claim of privilege in accordance with Federal Rule of Civil

Procedure 26(b)(5).  The time limitation for the search will be documents

sent, received, or produced from January 1, 2012, to the date of this

Opinion.  Graymont will produce all attachments to any responsive

unprivileged emails or other documents.

Graymont presents no evidence that complying with Request No. 13

will be unduly burdensome.  See Wiginton, 229 F.R.D. at 573.  The Worbel

Declaration only discusses the cost of First Financial's proposed duplicate

email searches.  Therefore, the cost of any ESI search necessary to

respond to Request No. 13 will be borne by Graymont.

Many of the responsive documents to be produced by Graymont may

contain private information that should be kept confidential, especially

those responsive to Request No. 13.  The Court has already entered an

agreed Confidentiality Order (d/e 35) to protect such information.  The

parties will comply with the Confidentiality Order with respect to documents

produced pursuant to the Opinion.

WHEREFORE Plaintiff First Financial Bank, N.A.'s (First Financial)

Motion to Compel Document Production (d/e 41) is ALLOWED in part and

DENIED in part.  Defendant State Bank of Graymont is hereby ordered to

produce the unprivileged responsive documents and privilege logs as set forth in this Opinion.  All documents and privilege logs are to be produced by September 10, 2013.  The costs for the searches for electronically stored information shall be borne in the manner set forth in this Opinion. First Financial's request for fees and expenses for bringing this Motion is denied.  The Court sua sponte extends fact discovery to October 4, 2013 and the dispositive motion deadline to November 4, 2013.   All other deadlines remain in full force and effect.

ENTER:   July 23, 2013

_____*s/ Byron G. Cudmore*_____
UNITED STATES MAGISTRATE JUDGE